IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **DOUGLAS CARSON** | § | |
| | § | |
| | § | **CIVIL ACTION 6:21cv12** |
| vs. | § | |
| | § | |
| | § | |
| **COMMISSIONER OF SOCIAL SECURITY** | § | |
| | § | |
| | § | |
| | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying his application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having considered Plaintiff's brief (ECF 12), the Commissioner's responsive brief (ECF 13) and Plaintiff's reply brief (ECF 14), the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

**PROCEDURAL HISTORY**

Plaintiff protectively filed an application for supplemental security income on February 12, 2019, alleging disability beginning on April 1, 2014.[1] The application was denied initially on

---

[1] Plaintiff previously filed an application for supplemental security income on October 8, 2015 alleging disability beginning April 1, 2014. The application was denied on January 22, 2016 and became the final decision of the Commissioner. Administrative Record, ECF 10-2, at *1.

1

April 30, 2019, and again upon reconsideration on June 25, 2019. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on May 6, 2020[2] and entered an unfavorable decision on July 8, 2020. Plaintiff sought review from the Appeals Council. On November 4, 2020, the Appeals Council denied the request for review. As a result, the ALJ's decision became that of the Commissioner. Plaintiff then filed this lawsuit on January 8, 2021, seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's]

---

[2] The hearing was conducted by telephone with consent due to the COVID pandemic. Administrative Record, ECF 10-2, at *16 (Bates stamp p. 15).

judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for

the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process. *Villa*, 895 F.2d 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id.*; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475). Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy. 20 C.F.R. §§ 404.1520(b)–(f). An affirmative answer at Step One or a negative answer at Steps Two, Four,

or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at Step Three, or an affirmative answer at Steps Four and Five, creates a presumption of disability. *Id*. To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in her July 8, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since February 12, 2019, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: type 2 diabetic mellitus with diabetic neuropathy and hypertension (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. He can sit for about 6 hours in an 8-hour workday. He can stand and/or walk for about 6 hours in an 8-hour workday. He cannot climb ladders, ropes, or scaffolds. He can frequently climb ramps and stairs. He cannot perform work at unprotected heights. He can frequently, but not constantly, push and/or pull for operation of foot controls with his bilateral lower extremities. He can have occasional exposure to temperature extremes of heat, wetness, humidity, and vibration. He can understand, remember, and carry out simple, routine tasks and make simple work-related decisions or judgments. He can have no requirement to read instructions or write reports, so a supervisor would give instructions orally with hands-on demonstration with verbal confirmation of understanding.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on July 17, 1966 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7. The claimant has a limited education (20 CFR 416.964).

8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since February 12, 2019, the date the application was filed (20 CFR 416.920(g)).

## ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at his hearing on May 6, 2020. Plaintiff testified that he takes his medications as prescribed when he has them. He stated that sometimes he has difficulty getting his medications because he does not have insurance and he was turned down for Medicaid. Plaintiff explained that he does not have a current ID card or driver's license and he lost his birth certificate, making it difficult for him to apply for services. Plaintiff testified that he mainly goes to the emergency room for treatment.

Plaintiff testified that he has sharp pain in his feet and his big toes are numb. He also stated that he is starting to have neuropathy pain in his hands, elbows, and legs. Plaintiff estimated that he can walk a mile before needing to stop and lie down. He stated that he walks that far two or three times per week. Plaintiff testified that he experiences pain in his legs after standing for approximately forty-five minutes. Then, he needs to lie down and prop up his legs for an hour. When he sits, he needs to get up after fifteen minutes to stretch his legs due to varicose veins.

Plaintiff estimated that he can pick up and carry five pounds. He stated that he uses a stick or a cane when he walks due to the neuropathy. Plaintiff dresses and bathes himself but cannot button small buttons. He cooks simple meals, does the laundry and feeds the horses but he has trouble folding laundry and cannot peel vegetables. Plaintiff acknowledged previous amphetamine use but testified he has not used illegal substances since 2018. Plaintiff described difficulty with reading comprehension and taking special education classes in school.

A vocational expert witness, Jennifer Maginnis, also testified at the hearing. Ms. Maginnis classified Plaintiff's past work as: carpenter helper, DOT 869.687-026, very heavy, SVP 2. The ALJ presented Ms. Maginnis a hypothetical individual of Plaintiff's age, education and work experience who could work at the light exertional level, frequently climb ramps and stairs, never climb, ladders, ropes, or scaffolds, never work at unprotected heights, frequently but not constantly push and pull for operation of foot controls with bilateral lower extremity, and occasionally be exposed to temperature extremes of heat, wetness, humidity and vibration. Ms. Maginnis testified that the individual could not perform Plaintiff's past work.

Ms. Maginnis then identified the following jobs that would be available for the hypothetical individual: (1) cafeteria attendant, DOT 311.677-010, light, SVP 2, with approximately 29,640 jobs in the national economy; (2) ticket taker, DOT 344.667-010, light, SVP 2, with approximately 17,220 jobs in the national economy; and (3) routing clerk, DOT 222.687-022, light, SVP 2, with approximately 20,520 jobs in the national economy. Ms. Maginnis testified that these jobs would remain available if limitations are added such that the individual can understand, remember, and carry out simple, routine tasks. Similarly, she stated that the positions of cafeteria attendant and ticket taker would remain if there was an additional limitation of no requirement to read instructions or write reports, such that a supervisor would give oral instructions with a hands-on

demonstration or some verbal confirmation of understanding. She added the following job that would be available with the added limitations: housekeeping cleaner, DOT 323.687-014, light, SVP 2, with approximately 96,080 jobs in the national economy. If the individual's exertional capacity is reduced to sedentary, Ms. Maginnis testified that there are no transferable skills.

Ms. Maginnis testified that her testimony was consistent with the Dictionary of Occupational Titles. She stated that the identified jobs do not allow for added rest breaks or more than two absences per month.

*Medical Evidence*

The medical records show a history of emergency room visits over the years for hyperglycemia due to type 2 diabetes. Plaintiff was additionally treated for cellulitis in the right hand and elbow in 2016. Plaintiff was transported to the emergency room by ambulance from the jail on August 10, 2017, with light-headedness, blurred vision and left-sided abdominal pain. Plaintiff had a glucose of 444 but no evidence of diabetic ketoacidosis. Chest X-Rays were normal, and an abdominal CT showed gallstones without wall thickening or pericholecystic fluid but was otherwise unremarkable. Plaintiff stated that he felt better after treatment with insulin, and he was discharged.

Plaintiff was treated for a virus on December 13, 2017. He was admitted on December 16, 2017, with hip pain, high blood pressure, uncontrolled diabetes and acute reactive arthritis caused by the viral infection. A CT showed inflammation and thickening of the left piriformis muscle and left sciatic nerve that was determined to be related to sciatic neuritis and left hip femoral-acetabular impingement with arthritic change.

Plaintiff went to the emergency room on August 15, 2018, complaining of high blood sugar, leg pain and left-sided low back pain radiating to the left leg with numbness and weakness.

A lumbar spine X-Ray was normal. Plaintiff's glucose reading was 539. Neurological examination revealed intact, equal strength in all four extremities, no focal neuro deficits, normal reflexes and a normal gait. Plaintiff tested positive for amphetamine. Dr. Shalev diagnosed acute sciatica, hyperglycemia and amphetamine abuse and prescribed naproxen. Plaintiff went to a different emergency room on August 22, 2018, with a glucose of 327. He complained of sciatica pain and received prescriptions for Tylenol with Codeine, Flexeril and Naprosyn.

At another ER visit on November 20, 2018, Plaintiff's glucose was 422 and he received IV insulin. Plaintiff returned on March 5, 2019, with a glucose of 431. Neurologic examination was normal. Plaintiff's urinalysis was negative for ketones.

Plaintiff went to the emergency room with hyperglycemia on October 16, 2019 and reported that he had been out of Metformin for three to four days. Plaintiff's workup showed hyperglycemia but not diabetic ketoacidosis. Plaintiff was treated with IV insulin and released with a prescription for Metformin.

State agency consultants reviewing the medical record determined that Plaintiff does not have severe mental or physical impairments.[3]

## DISCUSSION AND ANALYSIS

In his brief, Plaintiff asserts two issues: (1) whether the ALJ erred by determining Plaintiff's residual functional capacity ("RFC") first before evaluating the consistency of his reported symptoms with the evidence of record; and (2) whether the ALJ improperly relied upon her lay interpretation of the objective medical evidence of record to determine Plaintiff's RFC. Plaintiff alleges that the ALJ reached a conclusion on his RFC and then considered whether the objective medical evidence was consistent with that finding. Plaintiff further asserts that the ALJ

---

[3] Administrative Record, ECF 10-4, at *2–18 (Bates stamp pp. 63–79).

determined the RFC before assessing the credibility of his complaints. Plaintiff submits that the ALJ disregarded his complaints concerning his symptoms and limitations because they did not align with the RFC already determined by the ALJ. Next, Plaintiff complains that the ALJ did not identify a functional assessment from a medical source to support the RFC finding. Plaintiff argues that the ALJ improperly gleaned the limiting effects of his impairments after the State agency consultants found no severe impairments.

In response, the Commissioner asserts that the ALJ's RFC assessment is supported by substantial evidence. The Commissioner submits that the ALJ properly considered the objective medical evidence, including evidence of non-compliance, and the ALJ is not required to take the RFC findings directly from a medical opinion. The Commissioner argues that the ALJ is a fact-finder with the responsibility to interpret the medical evidence when determining a claimant's capacity for work. Similarly, the Commissioner asserts that the ALJ's assessment of Plaintiff's symptoms is supported by substantial evidence. The Commissioner states that the ALJ properly considered Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms and whether they are consistent with the medical evidence.

In his reply brief, Plaintiff again asserts that the ALJ did not identify a medical assessment, consistent with the RFC assessment, clearly establishing his ability to work. He submits that the ALJ improperly made her own lay opinions about his functional abilities and did not properly evaluate his symptoms.

Plaintiff does not dispute the ALJ's finding concerning his severe impairments or the finding that he does not meet a listing. Instead, Plaintiff contends that the ALJ assigned an RFC and then considered the evidence and his symptoms in a manner that would fit the predetermined RFC. At step two, the ALJ thoroughly summarized the medical record, function report and

disability report. She concluded that Plaintiff's severe impairments include type 2 diabetes mellitus neuropathy and hypertension and that he does not have a severe mental impairment. Turning to Plaintiff's RFC at step four, the ALJ considered Plaintiff's symptoms. The ALJ thoroughly summarized Plaintiff's testimony, including his statements about pain, daily activities, education, medication, and physical abilities. The ALJ determined that the alleged intensity, persistence and limiting effects of Plaintiff's symptoms are "not entirely consistent with the medical evidence and other evidence in the record" for the reasons that she detailed in her decision.[4]

The ALJ concluded that her RFC finding is supported by the objective evidence. She cited medical record entries showing Plaintiff's glucose ranged between 163 and 503 and he had blood pressures between 139/102 and 150/100. The ALJ explained:

> Affording the claimant the greatest deference, the limited objective evidence indicated above is consistent with the ability to perform light work activities with additional postural and environmental limitations, as more fully detailed above in the residual functional capacity. The fluctuating abnormalities in his blood sugars and blood pressure support the claimant's allegations of difficulty performing exertionally demanding tasks and reasonably limits him to the performance of light tasks, as outlined above. The claimant's limited education provides support for the limitation to simple work activities, as more fully detailed above in the residual functional capacity.

Administrative Record, ECF 10-2, at *25 (Bates stamp p. 24). The ALJ noted that the record shows "very limited, routine, and conservative" treatment.[5] Plaintiff responded well to treatment with insulin, fluids and pain medication and has been generally successful in managing his conditions when he takes his medication. The ALJ further considered records showing that Plaintiff failed to seek primary care through the county indigent facility and endocrinologic treatment despite repeated admonishments by medical personnel to do so. She observed that there

---

[4] Administrative Record, ECF 10-2, at *24 (Bates stamp p. 23).
[5] *Id*. at *25 (Bates stamp p. 24).

is no evidence in the record showing end organ damage or significant problems with vision, kidneys, hands or feet. The ALJ cited treatment notes showing no edema of the extremities, intact motor strength, and intact sensation. The ALJ concluded that "[overall], the longitudinal treatment record shows rather significant gaps in his treatment history as well as repeated non-compliance with his prescribed treatment regimen, which tends to suggest his symptoms may not have been as serious as has been alleged in connection with this application and appeal."[6]

Addressing Plaintiff's hearing testimony, the ALJ determined that Plaintiff's alleged severe limitations in lifting, using his hands and sitting are "out of proportion and inconsistent with the treatment notes and objective evidence." To support that determination, the ALJ cited specific physical examination findings that were unremarkable, showed strength of 5/5 throughout his extremities, intact sensation, no focal deficits, a normal gait, and no acute radiographic lumbar abnormalities. The ALJ again thoroughly summarized Plaintiff's statements concerning his daily activities from his function report and testimony and concluded that his statements concerning his ability to tend to his personal care, prepare simple meals, help with light housework, walk a mile to the store, and help with laundry and household chores lead to the conclusion that he can perform simple, light tasks. She noted that there is no evidence in the record showing that a hand-held assistive device, such as the walking stick used by Plaintiff, is medically required or prescribed.

In sum, the ALJ's decision reveals that the ALJ thoroughly and thoughtfully considered Plaintiff's symptoms and limitations. There is nothing in the decision supporting Plaintiff's assertion that the ALJ disregarded his statements concerning his symptoms because she had pre-determined his RFC. On the contrary, the ALJ extensively evaluated Plaintiff's statements in

---

[6] *Id.* at *26 (Bates stamp p. 25).

12

addition to the objective medical evidence and fully considered his symptoms in compliance with 20 C.F.R. § 416.929.

Plaintiff also submits that the ALJ improperly drew medical inferences on her own and arrived at functional limitations for him that were not expressed by any medical provider. It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id*. When there is medical evidence or medical opinions contradicting the ALJ's RFC finding, she "may not—without opinions from medical experts—derive the applicant's residual functional capacity based solely on the evidence of his or her claimed medical conditions. Thus, an ALJ may not rely on his own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Williams v. Astrue*, 355 Fed.Appx. 828, 832, n. 6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d at 557). Here, there is no medical evidence contradicting the ALJ's RFC assessment.

There is no requirement that an ALJ's RFC finding must mirror or match a medical opinion. *Myers v. Saul*, 2021 WL 4025993, at *8 (W.D.Tex. Sept. 3, 2021). "The determination of residual functional capacity is the sole responsibility of the ALJ" and she may properly interpret medical evidence to determine the claimant's capacity for work. *Taylor v. Astrue*, 706 F.3d 600, 602–603 (5th Cir. 2012). The ALJ's RFC assessment is not a medical opinion. *Joseph-Jack v. Barnhart*, 80 Fed.Appx. 317, 318 (5th Cir. 2003). Unlike medical providers and medical consultants, the ALJ considers additional evidence including the claimant's statements and testimony concerning his symptoms, his activities of daily living, the frequency and intensity of pain, the effects of medication, as well as all other medical evidence and opinion statements in the record. 20 C.F.R. § 404.1529.

The ALJ considered the opinions of the State agency medical consultants—Dr. Hegde and Dr. Ward—and concluded that their opinions, finding no severe physical impairment, were not persuasive. She explained that their opinions are not supported by the medical evidence showing multiple abnormal glucose or blood pressure readings and are not consistent with the overall longitudinal treatment record. Relying on her full assessment of all relevant factors, and "afford[ing] the claimant the greatest possible deference regarding residuals from his diabetes and assessed appropriate functional limitations," the ALJ arrived at her RFC finding.[7]

For the reasons above, the ALJ applied the correct legal standards and the decision is supported by substantial evidence. The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v.*

---

[7] *Id*. at *27 (Bates stamp p. 26).

*United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 25th day of May, 2022.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE

Case 6:21-cv-00012-JCB-KNM   Document 15   Filed 05/25/22   Page 15 of 15 PageID #: 1776